## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

FREDNELL JAMISON,  )
  )  Case No. 15-cv-0078
  Plaintiff,  )
  )  Judge Robert M. Dow, Jr.
AETNA LIFE INSURANCE COMPANY,  )
  )
  Defendant.  )

## MEMORANDUM OPINION AND ORDER

Plaintiff, a participant in an employee benefit plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, brought a civil action under § 502(a)(1)(B) of that Act, 29 U.S.C. § 1132(a)(1)(B), to recover long-term disability benefits allegedly due under the terms of the plan. Before the Court is Defendant's motion to dismiss Plaintiff's amended complaint, and Defendant's motion to strike Plaintiff's request for a jury demand and Plaintiff's request for prejudgment interest [22]. For the reasons set forth below, Defendant's motion [22] is granted in part and denied in part. Defendant's motion to dismiss Plaintiff's lawsuit as untimely based on the contractual limitations period set forth in the plan is denied. Plaintiff's demand that Defendant pay her insurance premiums is voluntarily dismissed. Defendant's motion to strike Plaintiff's claim for prejudgment interest is granted to the extent that Plaintiff's claim references the Illinois prejudgment-interest statute. Defendant's motion to strike Plaintiff's claim for a jury trial is granted.

## I.    Background[1]

Plaintiff Frednell Jamison was employed as an office administrator to the Vice President of Accounting and Financing with the Boeing Company up until February 25, 2009. At that time,

---

[1] The Court accepts as true the facts alleged in Plaintiff's amended complaint and makes all reasonable inferences in her favor. See *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

Plaintiff—who suffered from Hepatitis C, chronic joint pain, chronic fatigue, and other medical impairments—became unable to work because of her medical conditions. Plaintiff applied for long-term disability benefits under the terms of a group long-term disability insurance plan underwritten and administered by Defendant Aetna Life Insurance Company for the benefit of Boeing employees. Defendant awarded Plaintiff long-term disability benefits beginning on August 29, 2009.

Approximately one year later, on August 25, 2010, Defendant informed Plaintiff that her long-term disability benefits would be limited to 24 months because her claim was "primarily due to mental illness," and that her benefits would be terminated as of August 25, 2011.

At some point (the amended complaint does not say when), Plaintiff appealed this decision in accordance with Defendant's internal review procedures, arguing that her disability stemmed from her Hepatitis C, and that her mental-health issues were only a side effect of the numerous prescription medications she was taking to treat her Hepatitis C. Plaintiff claims that in a letter dated January 14, 2014, Defendant explained to her that it had completed its review of her appeal two years earlier (on January 19, 2012), claiming that it had sent her a letter stating as much on that date. [12, ¶ 15.] The implication from Plaintiff's complaint is that Plaintiff did not receive Defendant's January 19, 2012 letter, and potentially did not learn of the results of her appeal until she received Defendant's letter dated January 14, 2014.

Regardless, on June 18, 2013, Plaintiff sued Defendant in Illinois state court, allegedly raising the same issues raised in this case. Plaintiff says that her state court case was sent to an arbitrator pursuant to Illinois Supreme Court Rule 86, and that in December 2014, an arbitration panel determined that it did not have jurisdiction over Plaintiff's ERISA action.[2] On January 7, 2015, Plaintiff filed her *pro se* complaint in federal court. The Court granted Plaintiff's request

___

[2] Plaintiff's state court case was subsequently dismissed for want of prosecution. [See 28-1, at 4.]

for legal counsel [6], and Plaintiff's appointed counsel then filed an amended complaint [12] on Plaintiff's behalf, along with a demand for a jury trial [13].

## II.    Legal Standard

In reviewing the sufficiency of a complaint, a district court must accept all well-plead facts as true and draw all permissible inferences in favor of the plaintiff. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). The Federal Rules of Civil Procedure require only that a complaint provide the defendant with "fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Supreme Court has described this notice-pleading standard as requiring a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While factual allegations must be accepted as true, legal conclusions may not be considered. *Id*.

## III.   Analysis

### A.    Contractual Limitations Period

Defendant's main argument for dismissal is that Plaintiff failed to file her lawsuit within the contractual limitations period set forth in the plan, arguing that Plaintiff's time to file lapsed on November 26, 2012. Plaintiff calculates the limitations period differently, alleging that her time to sue ended on November 24, 2013.[3] ERISA does not specify a statute of limitations for

---

[3] The one-year disparity arises from how the parties calculate the "deadline for filing claims [for benefits]," which is a main component to determining the contractual limitations period. In general, the deadline for filing claims for benefits is a specific date (*i.e.*, 90 days after the so-called "elimination period," which defendant claims is "the first 26 weeks of a period of disability" [see 24, at 3]), but that date can be extended up to one year for those who fail to meet the deadline through no fault of their own, or indefinitely for those who are legally incapacitated. Plaintiff awards herself an extra year in calculating her limitations period, although it is unclear as to whether Plaintiff insists that this one-year add-on applies to all limitations-period calculations, or whether it only applies to those who actually received the

suits filed under § 502(a)(1)(B). However, "[a]bsent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013).

Because Plaintiff did not file her complaint until January 7, 2015—*i.e.*, years after the end of limitations period as calculated by either party—the parties' disagreement regarding the end of the limitations period seems inconsequential to the Court's determination regarding the timeliness of this lawsuit. But Plaintiff apparently filed a similar lawsuit in Illinois state court on June 18, 2013 (*i.e.*, within the limitations period as calculated by Plaintiff), and she argues that the limitations period should be tolled during the pendency of that case. Defendant disagrees. The issue here is one of equitable tolling.

Although broad in application, equitable tolling can be defined narrowly as "[t]he doctrine that if a plaintiff files a suit first in one court and then refiles in another, the statute of limitations does not run while the litigation is pending in the first court if various requirements are met." *Black's Law Dictionary* 579 (8th ed. 2004). Equitable tolling can apply in ERISA cases, *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1141 (7th Cir. 1992), and, generally speaking, is reserved for instances where the claimant "'has made a good faith error (*e.g.*, brought suit in the wrong court) or has been prevented in some extraordinary way from filing [her] complaint in time.'" *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001) (quoting *Jones v. Madison Service Corp.*, 744 F.2d 1309, 1314 (7th Cir. 1984)). If Plaintiff mistakenly filed her

one-year extension in filing their claim for benefits. Because the Court ultimately concludes that Defendant's motion to dismiss is premature based on the parties' disagreement concerning the applicable policy, the Court need not address this argument at this time. Should this issue remain relevant in any future motions regarding the timeliness of Plaintiff's complaint, the parties should be sure to set forth their positions regarding the inclusion or exclusion of this one year add-on in calculating the limitations period.

original lawsuit in state court in good-faith (and there is no indication that she did otherwise), then she most likely would be eligible for equitable tolling. But that would only save Plaintiff's claims under *her* calculation of the applicable limitations period; tolling the limitations period during the pendency of the state court proceedings does not save Plaintiff's case under Defendant's calculation of the limitations period.[4]

This brings the Court to the key difference between the parties' respective approaches, which is their reliance on separate written policies. Plaintiff relies on the Group Life and Long Term Disability Insurance Policy issued September 2, 1999, attached to her amended complaint as Exhibit A [see 12-1]; Defendant relies on a Non-Union Long Term Disability Policy (which it calls a "Booklet-Certificate") and a Summary of Coverage issued January 17, 2006,[5] attached to its motion to dismiss as Exhibits A and B, respectively [see 24-1, 24-2]. Plaintiff questions the authenticity of Defendant's exhibits (Defendant did not provide an affidavit attesting to their authenticity), arguing that the Court should disregard and/or strike Defendant's exhibits.

As a preliminary matter, a court normally cannot consider documents outside the complaint without converting it into a motion for summary judgment. See Fed. R. Civ. P. 12(d); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). That being said, a court can consider documents attached to a motion to dismiss if the document is part of the pleadings that are referred to in the plaintiff's complaint, are central to her claim, and are properly authenticated (or

---

[4] Plaintiff also makes an equitable estoppel argument, claiming that Defendant should be estopped from litigating over the timeliness of Plaintiff's complaint. [28, at 8–9.] For example, Plaintiff argues that Defendant made oral misrepresentations to her regarding her rights of appeal, and that Defendant's misrepresentations were compounded by ambiguities in the plan. Because Plaintiff's arguments are dependent on disputed facts (*e.g.*, what Defendant told Plaintiff about her rights to contest their decisions, and which plan applies), they are premature. See, *e.g.*, *Gallegos v. Mt. Sinai Med. Ctr.*, 210 F.3d 803, 809 (7th Cir. 2000) (contemplating estoppel arguments in an ERISA case at the summary judgment stage).

[5] It appears that Defendant attached this Summary of Coverage because it defines a term (*i.e.*, "elimination period") that is necessary to compute the limitations period as set forth in Defendant's primary exhibit (the "Booklet-Certificate"), in which the term "elimination period" is not defined.

authenticity is conceded). See *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009); *Tierney*, 304 F.3d at 738–39; *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *Venture Assocs. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

The requirement of authenticity cannot be overlooked, and a court's failure to acknowledge a lack of authenticity in ruling on a motion to dismiss is a reversible error. See *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) ("The district court * * * found that [documents attached to Defendant's motion to dismiss] were all documents to which the Complaint had referred, *that the documents were concededly authentic*, and that they were central to the plaintiffs' claim. If the court erred in this respect, we would be able to dispense with most of the rest of this appeal, since it would be necessary to remand on this basis alone." (emphasis added) (internal citation omitted)). Because Defendant did not authenticate its exhibits, the Court cannot consider them in ruling on Defendant's motion.

But looking at the bigger picture, the parties have submitted excerpts from two separate policies (or perhaps three, counting Defendant's exhibits separately), each arguing that their version of the policy governs. Plaintiff says that Defendant's policy is incomplete, ambiguous, and not authenticated. [28, at 2.] Defendant says that Plaintiff's policy is outdated and/or is not applicable in this matter. [24, at 5 n.2; 32, at 6–7.] Based on the parties' representations, the Court is unable to determine whether Plaintiff's policy, Defendant's policy, or some third, unknown policy applies. These are all indications that a legal determination as to the contractual limitations period is premature at the motion to dismiss stage.

As a closing point, the Court notes that a contractual limitations period is enforceable "as long as the period is reasonable." *Heimeshoff*, 134 S. Ct. at 610; *id.* at 612 ("We must give effect to the Plan's limitations provision unless we determine * * * that the period is unreasonably short

* * *."). In *Heimeshoff*, the start of the contractual limitations period was based on the date that

the participant's proof of loss was due. Because ERISA and its regulations require plans to

complete an internal review *after* participants submit proof of loss, and because a participant's

legal cause of action does not accrue until the plan's internal review is complete, the three-year

limitations period applicable in *Heimeshoff* began to run *before* the participant's legal cause of

action accrued (*i.e.*, before the plan completed its internal review). The Supreme Court

concluded that this arrangement was reasonable, based on the fact that (a) the typical internal

review lasted only one year, leaving most participants with two years to file suit, and (b) in

Heimeshoff's case, even though his internal review took two years, he still had one year to file

suit before the expiration of his limitations period. *Id.* at 613.

Here, according to both policies submitted to the Court, Plaintiff's limitations period is

measured based on the deadline for filing a claim for benefits, which itself is measured based on

the date on which Plaintiff incurred her disability. Notably, the limitations period is not tied to

any events relating to Plaintiff's loss of benefits. Under this rubric, and according to Defendant's

calculations, Plaintiff's three-year contractual limitations period ended on November 26, 2012.

Defendant claims that it notified Plaintiff that it completed its internal review process of her

appeal on January 19, 2012, meaning that Plaintiff had approximately 10 months remaining in

her limitations period when her cause of action arose—two months less than the 12-month period

that the Supreme Court deemed "reasonable" in *Heimeshoff*. In Plaintiff's amended complaint,

however, she implies that she did not receive notice of the completion of her appeal until January

14, 2014. [See 12, ¶ 16.] If Defendant's internal review ended on January 14, 2014, that would

mean that Plaintiff's cause of action accrued more than a year *after* her limitations period

expired. This would certainly be more than an "unreasonably short" period of time to file a civil

suit; it would be a *nonexistent* period of time. But because these factual details remain unresolved, the Court cannot address the reasonableness of the contractual limitations period applicable here. Once the parties determine which policy applies to Plaintiff's claims and the date upon which Plaintiff's cause of action arose, they should consider the Supreme Court's reasonableness requirement as articulated in *Heimeshoff*, as well as the other legal principles discussed herein, before raising any additional contractual-limitations arguments. For the time being, Defendant's motion to dismiss Plaintiff's claim based on its alleged untimeliness is denied.

### C.      Insurance Premiums

In addition to arguing that Plaintiff's complaint, as a whole, is untimely, Defendant takes a second bite at a particular component of Plaintiff's prayer for relief: namely, Plaintiff's request that Defendant be held responsible for the payment of her life insurance premiums. [See 24, at 5–6.] Plaintiff responded with a single sentence: "Plaintiff withdraws this claim, and moves for voluntary dismissal of this claim only." [28, at 10.] Accordingly, Plaintiff's request "that the Court order Defendant to pay Plaintiff's life insurance under a waiver of premium" [12, at 5] is dismissed without prejudice.[6] This dismissal does not impact any of the remaining forms of relief that Plaintiff seeks in her amended complaint.

### D.      Demand for Jury Trial

Defendant also seeks dismissal of Plaintiff's demand for a jury trial, arguing that there is no right to a jury trial in an ERISA case. [See 24, at 6; 32, at 11–13.] Plaintiff argues that she is entitled to a jury trial because she is pursuing an action in law, and is not seeking equitable relief.

---

[6] Defendant's basis for dismissal is an alleged failure to comply with Federal Rule of Civil Procedure 8, which, if successful, also would have resulted in a dismissal without prejudice. As such, the Court need not address the merits of Defendant's argument.

Plaintiff's suit is brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), which allows a participant to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(A)–(B). The statute also allows a participant to bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." *Id.* § 1132(a)(1)(B). These forms of relief are inherently equitable. See *Smith v. State Farm Grp. Long Term Disability Plan for U.S. Employees*, 2013 WL 4538516, at *1–2 (N.D. Ill. Aug. 27, 2013) ("Because a suit by a beneficiary seeking to enforce the terms of a plan is equitable in nature, plaintiff is not entitled to a jury trial." (citing *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1879 (2011))). As such, "all eleven Circuit Courts that have reviewed the issue of whether there is a right to a jury trial under § 502(a) of ERISA have concluded that there is no such right." *Zuckerman v. United of Omaha Life Ins. Co.*, 2011 WL 2173629, at *6 (N.D. Ill. May 31, 2011) (citing *Patton v. MFS/Sun Life Fin. Distribs.*, 480 F.3d 478, 484 (7th Cir. 2007) (concluding that "the plaintiff ha[d] no right to a jury trial" in an ERISA case); *McDougall v. Pioneer Ranch Ltd. P'ship*, 494 F.3d 571, 575–76 (7th Cir. 2007) ("The general rule in ERISA cases is that there is no right to a jury trial because 'ERISA's antecedents are equitable, not legal.'" (quoting *Mathews v. Sears Pension Plain*, 144 F.3d 461, 468 (7th Cir. 1998)))); see also *Advanced Ambulatory Surgical Cntr., Inc. v. Cigna Healthcare of Ill.*, 2014 WL 4914299, at *6 (N.D. Ill. Sept. 30, 2014) (striking jury demand for ERISA claims); *Brown v. Club Assist Road Service U.S., Inc.*, 2013 WL 5304100, at *10 (N.D. Ill. Sept. 30, 2013) (noting "that there is no right to a jury trial on [an] ERISA claim" (citing *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 689 (7th Cir. 2010))).

Plaintiff is not entitled to a jury trial on her ERISA claim. Defendant's motion to strike Plaintiff's demand for a jury trial is granted.

### E.        Prejudgment Interest

In her amended complaint, Plaintiff requests that the Court order Defendant to pay her prejudgment interest at a rate of 9% per annum on all benefits that have accrued prior to the date of judgment in accordance with 215 ILCS 5/357.9 or 5/357.9a. [See 12, at 5.] Defendant moved to dismiss this request, arguing that state statutes do not govern an award of prejudgment interest in an ERISA case. Defendant is correct that the Illinois statute that Plaintiff cited in her complaint does not apply in this case. See, *e.g.*, *Curtis v. Hartford Life & Accident Ins. Co.*, 64 F. Supp. 3d 1198, 1224 (N.D. Ill. 2014). That being said, there remains a presumption in favor of prejudgment interest in ERISA cases, *Fritcher v. Health Care Service Corp.*, 301 F.3d 811, 820 (7th Cir. 2002), and the Seventh Circuit has suggested that district courts use "the prime rate for fixing prejudgment interest where there is no statutory interest rate." *Gorenstein v. Quality Enterprises, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989).

To the extent that Plaintiff's claim for prejudgment interest references the Illinois prejudgment-interest statute, the claim is dismissed. Plaintiff may still proceed on her claim for prejudgment interest, although should Plaintiff be entitled to prejudgment interest in this case, the calculation of that amount will be determined in accordance with *Gorenstein v. Quality Enterprises, Inc.*, 874 F.2d 431 (7th Cir. 1989), absent any binding authority to the contrary.

### F.        Motion to Amend the Complaint

In her response to Defendant's motion to dismiss, Plaintiff says that her claims are not time-barred because Defendant failed to provide her with adequate notice regarding her right to sue as required by the ERISA statute, citing the Department of Labor's regulations governing

ERISA, codified at 29 C.F.R. § 2560.503-1(g)(1)(iv). Whether and to what extent Defendant

provided Plaintiff with notice is a fact-bound issue inappropriate for resolution at the motion to

dismiss stage. However, Plaintiff says that "if this Court determines the allegations [regarding

Defendant's lack of compliance with ERISA's notice requirements] are necessary to state a

cause of action, Plaintiff requests leave to file a Second Amended Complaint." [28, at 5.]

Defendant interprets this comment as a motion for leave to file a second amended complaint, and

argues that Plaintiff's "motion" should be denied. [32, at 13.]

Because Defendant's untimeliness argument is an affirmative defense (*i.e.*, Defendant

carries the burden), Plaintiff's ability to defend herself against this allegation is not limited by the

scope of her complaint. Thus, as presented here,[7] Plaintiff's allegation that Defendant failed to

comply with ERISA's notice requirements is not an independent cause of action; it is a rebuttal

to an affirmative defense.[8] See, *e.g.*, *Reinwand v. Nat'l Elec. Benefit Fund*, 2015 WL 5009973, at

*4–5 (W.D. Wisc. Aug. 18, 2015) (concluding that Defendant's failure to comply with ERISA's

notice requirements excused the plaintiff's failure to exhaust the fund's administrative remedies);

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 2012 WL 171325, at *6–7 (D. Conn. Jan. 20, 2012)

(concluding that the defendant's failure to comply with ERISA's notice requirements "d[id] not

affect the untimeliness of [the plaintiff's] Complaint"). As such, Plaintiff can make her lack-of-

---

[7] In other instances, failure to comply with ERISA's notice requirements can preclude a federal court's ability to substantively review a denial of benefits. See *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 697 (7th Cir. 1992).

[8] Whether Defendant's alleged notice-providing deficiencies will excuse the purported untimeliness of Plaintiff's complaint is a "fact-intensive" inquiry, see *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 693 (7th Cir. 2010), where a failure to comply with ERISA's notice requirements does not automatically excuse a delay in filing. See *Schorsch v. Reliance Std. Life Ins. Co.*, 693 F.3d 734, 470 (7th Cir. 2012) (noting that Seventh Circuit cases relating to a defendant's failure to comply with ERISA's notice requirements "suggest[ed] that [the defendant's] notice may have been less than perfect, but deficiencies in the notice would not necessarily excuse [the plaintiff's] failure to exhaust her administrative remedies" (citing *Schneider v. Sentry Grp. Long Term Disability Plan*, 422 F.3d 621, 625–26, 628 (7th Cir. 2005); *Robyns v. Reliance Std. Life Ins. Co.*, 130 F.3d 1231, 1236, 1238 (7th Cir. 1997))).

notice argument in response to Defendant's contractual-limitations defense without the need to amend her complaint.

If, however, Plaintiff wishes to use this lack-of-compliance argument in another manner (*i.e.*, other than to rebut an affirmative defense) and feels that amending her complaint is necessary in order to make such an argument, Plaintiff may seek leave from the Court in accordance with Fed. R. Civ. P. 15(a)(2) to do so.

## IV. Conclusion

For the foregoing reasons, Defendant's motion [22] is granted in part and denied in part. Defendant's motion to dismiss Plaintiff's lawsuit as untimely based on the contractual limitations period in the plan is denied. Plaintiff's demand that Defendant pay her insurance premiums is voluntarily dismissed. Defendant's motion to strike Plaintiff's claim for prejudgment interest is granted to the extent that Plaintiff's claim references the Illinois prejudgment-interest statute. Defendant's motion to strike Plaintiff's claim for a jury trial is granted. This case is set for future status hearing on 11/17/2015 at 9:00 a.m.


Dated: November 2, 2015
_____
Robert M. Dow, Jr.
United States District Judge